**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 02:00 PM March 9, 2020**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JEANA RENEE HUTSELL, | ) | CASE NO. 18-61474 |
| | ) | |
| Debtor. | ) | ADV. NO. 18-06038 |
| _____ | ) | |
| JEANA RENEE HUTSELL, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| NAVIENT, et al. | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| Defendants. | ) | |

## I.    INTRODUCTION

The dispute in this matter revolves around whether, and to what extent, courts should consider money received by a debtor as charity for purposes of <u>Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)</u>, 831 F.2d 395 (2d Cir. 1987).

Plaintiff filed this adversary proceeding against multiple entities, seeking a discharge of her student loans pursuant to 11 U.S.C. § 523(a)(8). Defendant-Intervenor, Education Credit

Management Corporation ("ECMC"), filed a motion for summary judgment (the "Motion"), which Plaintiff opposes. Because there are genuine disputes of material fact, the court will deny the Motion.

## II.   JURISDICTION

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference issued by the U.S. District Court for the Northern District of Ohio. General Order 2012-7. This matter is a core proceeding and the court has authority to enter final orders. 28 U.S.C. §157(b)(2)(I); see, e.g., Kohl v. IRS (In re Kohl), 397 B.R. 840, 844 (Bankr. N.D. Ohio 2008). Pursuant to 28 U.S.C. §§ 1408 and 1409, venue in this court is proper.[1]

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## III.   BACKGROUND

*1. Factual Background*

Plaintiff is 47 years old, single, and has no dependents. (Pl.'s Resp. to Def.'s Interrogs. Nos. 3, 8, ECF 32-1.) She lives alone in an apartment and her parents pay her rent. (Id. at 3, 5, 8, 17.) She owns no real property or investments, nor does she own a vehicle. (Id. at 10, 11, 18.) She drives a 2016 Kia Soul, which her parents let her use. (Id. at 18, 20.) The highest level of education she obtained was a high school diploma. (Id. at 1.)

Plaintiff has an extensive history of medical issues. In 1990, Plaintiff was diagnosed with Crohn's disease. (Id. at 21.) She had 3 surgeries within 2 years and now she has a permanent ileostomy. (Id.) Due to her condition, she must use an ostomy bag, which requires "constant upkeep in terms of cleanliness, capacity, and to keep it free from infection." (Id.) Changing her ostomy bag is an "hour long process of showering, sanitizing, and reapplying [her] glue, stoma wafer and then [sic] new bag plus of course a complete change of clothes." (Id.) Occasionally, Plaintiff will suffer infections around her stoma, which prevent her from wearing her ostomy bag and leaving her home. (Id.) She never knows when her bag might break or come loose, but it can happen at any time. (Id.) Her "ostomy also has closed up dozens of times causing bowel obstructions of which [she has] no warning or control." (Id.)

Over the years, Plaintiff has experienced difficulties with employers who have found her "undependable" because she must promptly attend to her medical emergencies. (Id.) It has been challenging for Plaintiff to consistently hold a job and she has had to miss time from work due to illnesses. (Id. at 21, 24; Pl's. Aff. 8, ECF 33; Ex. B to Pl.'s Resp. ECF 35.)

---

[1] Hereinafter, any reference to any section ("§" or "section") refers to a section in Title 11 of the United States Code (the "Bankruptcy Code"), and any reference to any "Rule" refers to a Federal Rule of Bankruptcy Procedure.

In 2007, Plaintiff took out a loan "to study Chemical Dependency Certification at [sic] online at Rio Salado." (Pl.'s Aff. 1.) It was a 2-year program, but Plaintiff withdrew because of her health. (Id. at 2.) Also, the program and certification were, in Plaintiff's words, "useless and wouldn't have provided an income that allowed [her] to ever pay the loan back." (Pl.'s Resp. to Def.'s Interrogs. No. 24.)

As of February 20, 2020, the total balance of Plaintiff's student loan debt to ECMC is $29,892.38 at a fixed interest rate of 6.8%. (ECMC Supp. Br. 6, ECF 52.) ECMC contends that, over a 20-year period, Plaintiff's payments would be approximately $228/mo. (Id.) ECMC also claims that Plaintiff may be eligible for an income-driven repayment ("IDR") plan calling for $0.00/mo if the default status of her loans is resolved. (Id.) Aside from her student loans, Plaintiff has no other outstanding debts. (Pl.'s Resp. to Def.'s Interrogs. No. 19.)

In 2008, Plaintiff was diagnosed with thyroid cancer. (Id. at 23.) That same year, her husband left her. (Id.) In May of 2008, Plaintiff's student loans went into default "[d]ue to the health complications [and] personal tragedies [she] had at the time." (Id.) Plaintiff's cancer returned in 2009 and 2012, and there may be a suspicion of reoccurrence. (Id. at 21, 24; Pl's Aff. 3; Ex. A to Pl.'s Resp., ECF No. 34; Exs. D1-D10 to Pl's Resp., ECF Nos. 37-46.)

Plaintiff claims that she has been unable to pay her student loans ever since she withdrew from school due to a lack of income. (Pl.'s Aff. 6; Ex. A to Pl.'s Resp.) She also claims that she had difficulties finding out where she was supposed to send payments. (Pl.'s Aff. 7; Ex. A to Pl.'s Resp.) From October 2017 to February 2018, she made efforts to determine where she was supposed to send payments but was unable to determine who had her loans. (Id.) At one time, one of Plaintiff's family members had offered to pay her loans in a lump sum if Plaintiff could find out how much she owed. (Id.)

Plaintiff currently works at Discount Drug Mart, where she has worked for a little over a year. (Pl.'s Resp. to Def.'s Interrogs. No. 24.) She works roughly 37-38.5 hours per week and is unable to work more hours due to her health. (Id.) She makes $12.00 per hour gross and $8.48 per hour net. (Id. at 4.) Her net monthly income is $2,562.83, which includes wages of $1,366.33/mo and $1,196.50/mo from her parents. (Id. at 6.) Plaintiff has health care through her employer. (Id. at 7.)

Plaintiff's average monthly expenses are as follows:

| | |
|---|---|
| Rent | $615.00 |
| Electricity | $171.09 |
| Cable & internet | $160.00 |
| Telephone | $40.00 |
| Purchase of new phone $300 | $25.00 |
| Food | $400.00 |
| Clothing (uniforms) | $75.00 |
| Laundry | $40.00 |
| Medical expenses: | |

3

| | |
|---|---|
| -Ostomy supplies | $400.00 |
| -Thyroid medication | $10.50 |
| Personal care products | $40.00 |
| Recreation | $22.99 |
| Transportation | $80.00 |
| Pet supplies | $50.00 |
| Auto insurance | $181.50 |
| **Total** | **$2,311.08** |

(Pl.'s Resp. to Def.'s Interrogs. Nos. 5, 17.) Plaintiff's parents pay for her rent, ostomy supplies, and auto insurance. (Id.) Plaintiff averages $251.75 per month in disposable income.

*2. Procedural Background*

Plaintiff filed a petition for relief under chapter 7 of the Bankruptcy Code on July 20, 2018 and received a discharge on February 1, 2019.[2] She filed this adversary proceeding on December 26, 2018, naming multiple defendants, including: Navient, Allied Interstate, Financial Asset Management System, Great Lakes Higher Education, Pioneer Credit Recovery Inc., USA Funds c/o Sallie Mae, USA Funds, United States Attorney, the Attorney General of the United States, the U.S. Department of Education, and Account Control Technology Inc.

In her complaint, Plaintiff alleges that 7 entities were, as of the petition date, holders of her student loans. These entities include: Account Control Technology (unknown amount owed), Allied Interstate (owed $23,977.07), Financial Asset Management System (owed $23,640.37), Great Lakes Higher Education (unknown amount owed), Navient (owed $2,686.68), Pioneer Credit Recovery Inc (owed $27,355.00), and USA Funds (owed $26,748.03). Aside from ECMC, who is owed $29,892.38 at a fixed interest rate of 6.8%, it is not clear whether Plaintiff actually owes any student loan debt to any other entities.

On January 25, 2019, an order was entered approving a stipulation dismissing Navient from this adversary proceeding. On February 4, 2019, the U.S. Department of Education filed an answer denying that it has an interest in the student loans alleged in Plaintiff's complaint.

On February 13, 2019, ECMC filed a motion to intervene, which the court granted. In the motion, ECMC stated that the loans owed by Plaintiff consist of, among other things, a consolidated FFEL Program loan guaranteed by Ascendium Education Solutions, Inc./Great Lakes Higher Education Corporation, which was recently transferred to ECMC. On March 5, 2019, ECMC answered Plaintiff's complaint, admitting that it is the holder of four of Plaintiff's student loans.

---

[2] Section 523(a)(8) is "self-executing," which means that "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 450 (2004) (quotation marks and citations omitted). A debtor can bring a § 523(a)(8) dischargeability action at any time. Rule 4007(b).

ECMC filed its motion for summary judgment (the "Motion") on December 30, 2019, Plaintiff filed a response on January 13, 2020 (the "Response"), and ECMC filed a reply (the "Reply") on January 16, 2020. On February 14, 2020, the court entered an order requiring the parties to file supplemental briefs, which the parties filed on February 27, 2020.

## IV.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056, provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets its initial burden, the burden shifts to the non-moving party to establish the existence of a fact requiring trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A fact is "material" only if its resolution will affect the outcome of the proceeding. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. Matsushita, 475 U.S. at 587.

## V.   DISCUSSION

Plaintiff has not defaulted the defendants who have failed to respond to her complaint. Nor has she indicated in her affidavit or responses to ECMC's interrogatories whether she has any student loans in addition to what she owes ECMC. Therefore, the court will confine its analysis to whether repayment of ECMC's loans will impose an undue hardship on Plaintiff.

*1. Applicable Law*

Student loan debt is generally non-dischargeable in bankruptcy "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents . . . ." § 523(a)(8). In order to satisfy the "undue hardship" standard in § 523(a)(8), a debtor must prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler), 397 F.3d 382, 385 (6th Cir. 2005) (quoting Brunner, 831 F.2d at 396). The debtor bears the burden of establishing each of these three elements by a preponderance of the evidence. Barrett v Educ. Credit Mgmt. Corp. (In re Barrett), 487 F.3d 353, 358-59 (6th Cir. 2007).[3]

_____

[3] Section 523(a)(8) was enacted as part of the Bankruptcy Reform Act of 1978. Bene v. Educ. Credit Mgmt. Corp. (In re Bene), 474 B.R. 56, 71, n. 15 (Bankr. W.D.N.Y. 2012). As originally enacted,

## 2. Can Plaintiff Maintain, Based on Current Income and Expenses, a Minimal Standard of Living if Forced to Repay Her Student Loans?

The first element of the Brunner test "contemplates that a debtor is entitled to maintain a minimal standard of living, which includes basics such as food, clothing, shelter, medical care and transportation for himself and any dependents, before he is required to repay student loan debts." Murrell v. Edsouth (In re Murrell), 605 B.R. 464, 469 (Bankr. N.D. Ohio 2019) (citations omitted). Therefore, the court should examine the debtor's income and expenses and evaluate what expenses are required to maintain a basic standard of living. Id. at 469 (citation omitted); see, e.g., Ivory v. U.S. (In re Ivory), 269 B.R. 890, 899 (Bankr. N.D. Ala. 2001) (roughly defining the elements of what is needed for a "minimal standard of living" in modern society). "After providing for necessary expenses, the court is to determine whether the debtor has income leftover with which to pay his student loan debts." Murrell, 605 B.R. at 469-70 (citation omitted).

Here, Plaintiff receives $2,562.83/mo. But almost half of this (i.e. $1,196.50/mo) comes in the form of support from her parents, who, due to Plaintiff's medical issues and low income, pay for her rent, ostomy supplies and auto insurance. Without the support from her parents, Plaintiff's monthly income is only $1,366.33.[4] On the expense side of the equation, including the support from her parents, Plaintiff averages $2,311.08/mo. Plaintiff personally only pays $1,114.58/mo in expenses. In the Motion, ECMC does not appear to challenge the reasonableness or necessity of any of Plaintiff's expenses. Instead, ECMC points out that Plaintiff's budget shows a monthly surplus of $251.75 and therefore a present ability to repay her loans.

The issue in this case centers on whether, and to what extent, money received by the debtor as charity is income for purposes of determining whether the debtor satisfies the first Brunner prong. The Sixth Circuit has not addressed this issue.

ECMC argues that there is no reason the court should not consider financial support received by a debtor for purposes of Brunner. ECMC cites several cases where courts have considered such support. And, in each of these cases, the court found that the debtor(s) could not

---

§ 523(a)(8) provided that government student loans were not dischargeable in bankruptcy unless: "(1) the loan first became due five years before the bankruptcy filing (excluding deferment period) or (2) excepting the debt from discharge would impose an undue hardship." Id. In 1990, Congress amended the statute by making certain educational benefits and obligations nondischargeable and extending the five-year period to seven years. Id. In 1998, the statute was amended again to eliminate the seven-year period, thereby excepting all government student loans from discharge unless there was an "undue hardship." Id. Finally, in 2005 Congress amended the statute to include "any other educational loan that is a qualified educational loan as defined in [the Internal Revenue Code]." Id.

[4] Under either figure, Plaintiff's income exceeds the 2018 federal poverty guideline for a household of 1. https://aspe.hhs.gov/2018-poverty-guidelines. However, as the Sixth Circuit has explained, debtors "need not live in abject poverty before a discharge is forthcoming." Hornsby, 144 F.3d at 1151 (citing Rice v. United States (In re Rice), 78 F.3d 1144, 1151 (6th Cir. 1996)).

maintain a minimal standard of living even with the charity of others. See, e.g., Marshall v. Student Loan Corp. (In re Marshall), 430 B.R. 809, 814 (Bankr. S.D. Ohio 2010); Brown v. Sallie Mae, Inc. (In re Brown), 442 B.R. 776, 782 (Bankr. Colo. 2010); Grawey v. Ill. Student Asst. Comm. (In re Grawey), No. 01-8010, 2001 WL 34076376, at *3 (Bankr. C.D. Ill. Oct. 11, 2001); Kirchhofer v. Direct Loans (In re Kirchhofer), 278 B.R. 162, 167 (Bankr. N.D. Ohio 2002); Yapuncich v. Montana Guar. Student Loan Program (In re Yapuncich), 266 B.R. 882, 890-92 (Bankr. D. Mont. 2001); Maulin v. Salliemae (In re Maulin), 190 B.R. 153, 155-56 (Bankr. W.D.N.Y. 1995). But none of these cases involved a debtor who, like Plaintiff, may only be able to repay her loans and maintain a minimal standard of living by relying heavily on the charity of others.

Plaintiff claims that charitable support should not be considered when determining whether a debtor can meet the first Brunner prong. A debtor's ability to maintain a minimal standard of living, Plaintiff argues, should focus solely on the *individual debtor's* ability, without consideration of charity given to the debtor by the debtor's parents or a third party. Plaintiff also argues that, for purposes of federal IDR plans, a debtor's "adjusted gross income," which excludes gifts from third parties, is used. 34 C.F.R. § 682.215 (addressing IDR plans for FFEL Program loans); 34 C.F.R. § 685.221 (addressing IDR plans for William D. Ford Federal Direct Loan Program loans); see also 26 U.S.C. § 61(a) (defining "gross income"); 26 U.S.C. § 62(a) (defining "adjusted gross income"); 26 U.S.C. § 102(a) (excluding "gifts" from "gross income"). Thus, Plaintiff argues, this definition of income, to the extent it excludes gifts from third parties, should guide the court's analysis for purposes of Brunner.

This court is obligated to apply Brunner unless and until the Sixth Circuit says otherwise. Chenault v. Great Lakes Higher Educ. Corp. (In re Chenault), 586 B.R. 414, 421 (B.A.P. 6th Cir. 2018). The problem that arises in this case is that neither Brunner nor the Sixth Circuit explain whether and to what extent courts should consider charity as "income" for purposes of the test.

Several courts have found that a *non-debtor spouse's* income must be included for purposes of Brunner, reasoning that the spouse has a legal obligation to support the debtor. See, e.g., Miller v. Sallie Mae, Inc. (In re Miller), 409 B.R. 299, 313 (Bankr. E.D. Pa. 2009) (finding that it was "entirely appropriate" for purposes of Brunner to consider the income of debtor's spouse since spouse had "a legal duty to provide for her support." (citations omitted)); see also Gill v. Nelnet Loan Servs. (In re Gill), 326 B.R. 611, 626 (Bankr. E.D. Va. 2005) (citing White v. U.S. Dep't of Educ. (In re White), 243 B.R. 498, 510 (Bankr. W.D. Va. 1995)). But that reasoning does not apply in this case, since Plaintiff's parents have no legal obligation to provide for her.

After examining various definitions of income, this court believes that a debtor's receipt of charity from individuals with no legal obligation to provide such support should generally not be considered as income for purposes of Brunner when, without such support, the debtor cannot maintain a minimal standard of living and repay her loans.

7

### a. The Bankruptcy Code's Definition of Current Monthly Income

When a debtor files a bankruptcy petition, the debtor is required to complete the so-called "means test," which is essentially used to determine whether the debtor has monthly disposable income to pay his or her debts. See Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 65 (2011). The means test was adopted by Congress as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Id. In order to complete the means test, the debtor's "current monthly income" ("CMI") must be determined. Section 101(10A) was added to the Bankruptcy Code as part of BAPCPA, and defines CMI as:

> (A) . . . the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—
>
> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>
> (ii) the date on which current income is determined by the court . . . if the debtor does not file [such] schedule . . . and
>
> (B)(i) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents. . . .

§ 101(10A).

Clearly, under this broad definition, the support from Plaintiff's parents would be included as CMI. But Brunner was decided in 1987, long before the passage of BAPCPA, and bankruptcy courts are not obligated to use a debtor's income and expenses as stated on the debtor's means test or schedules in student loan dischargeability actions. See, e.g., Pierson v. Navient (In re Pierson), No. 17-3096, 2018 Bankr. LEXIS 3106, at *9, 10 (Bankr. N.D. Ohio Oct. 4, 2018) (utilizing debtor's income and expenses at time of trial even though expenses decreased after petition date); see also Rule 4007 (a debtor may file a student loan dischargeability action at any time). Therefore, there is no indication that courts should utilize the Bankruptcy Code's definition of CMI when determining whether a debtor satisfies the first prong of Brunner.

### b. The Internal Revenue Code's Definition of Income

By way of comparison, the Internal Revenue Code defines "gross income" as "all income from whatever source derived . . . ." 26 U.S.C. § 61(a). However, "[g]ross income does not include the value of property acquired by *gift* . . . ." 26 U.S.C. § 102(a) (emphasis added); see also Commissioner v. Duberstein, 363 U.S. 278, 285-86 (1960) (whether a transfer is a "gift"

8

depends on the intention of the transferor).  Under this definition, which is narrower than the Bankruptcy Code's definition of CMI, the support from Plaintiff's parents may constitute a gift and thus be excluded from her gross income.  In addition, Plaintiff correctly points out that, for purposes of a federal IDR plan, Plaintiff's "adjusted gross income," which excludes gifts from her parents, would be used.  34 C.F.R. § 682.215; 34 C.F.R. § 685.221; 26 U.S.C. § 62(a).

### c.  Dictionary Definitions of Income

Black's Law Dictionary defines income as "[t]he return in money from one's business, labor or capital invested; gains, profits, salary, wages, etc."  BLACK'S LAW DICTIONARY 687 (5th ed. 1987).  Webster's defines income as "1: a coming in . . . 2: a gain or recurrent benefit usually measured in money that derives from capital or labor; *also*: the amount of such gain received in a period of time . . . ."  WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 610 (1988).  Neither of these definitions support the proposition that charity or gifts should be considered part of an individual's income.

### d.  Conclusion

The concept of a "minimal standard of living" requires a certain degree of financial independence and control.  Thus, a debtor's receipt of charity from a third party who is under no legal obligation to provide such support should generally not be considered income for purposes of Brunner, when, without such support, the debtor cannot maintain a minimal standard of living and repay her loans.  To hold otherwise would be to pin on Brunner a punitive standard not contained therein.  See, e.g., Rosenberg v. N.Y. State Higher Educ. Servs. Corp., 610 B.R. 454, 458 (Bankr. S.D.N.Y. 2020) (explaining that "[t]he harsh results that often are associated with Brunner are actually the result of cases interpreting Brunner.").

In this case, Plaintiff relies on the generosity of her parents to maintain a civilized existence.  Plaintiff's parents have no legal obligation to provide this support but do so because of Plaintiff's serious health issues and low income.  Without this support, it is not clear whether Plaintiff, relying solely on her income from Discount Drug Mart, can maintain a minimal standard of living if forced to repay her loans.[5]  Therefore, the court finds that there are genuine issues of material fact regarding the first Brunner prong.

3.  *Do Additional Circumstances Exist Indicating that Plaintiff's State of Affairs is Likely to Persist for a Significant Portion of the Repayment Period of the Student Loans?*

Regarding the second element, the Sixth Circuit has held that:

> Such circumstances must be indicative of a certainty of
> hopelessness, not merely a present inability to fulfill financial
> commitment.  They may include illness, disability, a lack of usable
> job skills, or the existence of a large number of dependents.  And,

---

[5]  ECMC concedes that Plaintiff may be eligible for an IDR plan calling for "payments" of $0.00/mo. (ECMC Supp. Br. 6, ECF 52.)  If true, this supports the notion that Plaintiff cannot afford to maintain a minimal standard of living and repay her student loans under the original note terms.

most importantly, they must be beyond the debtor's control, not borne of free choice. Choosing a low-paying job cannot merit undue hardship relief.

Oyler, 397 F.3d at 386 (citations and quotation marks omitted). In addition, the debtor must "precisely identify her problems and explain how her condition would impair her ability to work in the future." Tirch v. Penn. Higher Educ. Assistance Agency (In re Tirch), 409 F.3d 677, 681 (6th Cir. 2005) (citations omitted).

Plaintiff has suffered from Crohn's disease for almost three decades. The complications from Plaintiff's disease have made it difficult for her to maintain a job over the years and have prevented her from working more hours than she already does. Plaintiff is likely to continue to deal with the disease and its effects for the rest of her life. Plaintiff has no higher education and no apparent job skills that would allow her to obtain a higher-paying job.

Additionally, Plaintiff was diagnosed with thyroid cancer in 2008 and there may be a suspicion of reoccurrence. Plaintiff's medical issues, and their effects on her ability to work, are "indicative of a certainty of hopelessness" and certainly "not borne of free choice." Thus, viewing the evidence in a light most favorable to Plaintiff, the court finds that a genuine dispute exists regarding the second Brunner prong.

*4. Has Plaintiff Made Good Faith Efforts to Repay Her Student Loans?*

In this context, good faith "'is essentially an inquiry into whether the debtor has consciously or irresponsibly disregarded his or her repayment obligation—or, instead, whether there is some justification for the debtor's default and ongoing inability to repay the loan.'" Trudel v. U.S. Dep't of Educ. (In re Trudel), 514 B.R. 219, 228-29 (B.A.P. 6th Cir. 2014) (quoting Crawley v. Educ. Credit Mgmt. Corp. (In re Crawley), 460 B.R. 421, 444 (Bankr. E.D. Pa. 2011)). "Courts consider a number of factors to determine good faith, including the debtor's repayment history and her efforts to obtain employment, maximize income, minimize expenses, and participate in alternative repayment programs, though no single factor is dispositive." Trudel, 514 B.R. at 229 (citations omitted). "Inherent in any good-faith analysis under the third prong of the Brunner test is whether and the extent to which the debtor actually made any voluntary payments on the obligation." Trudel, 514 B.R. at 229 (citations, quotation marks, and alteration omitted).

ECMC argues that Plaintiff's complaint and discovery responses do not purport to show any good faith efforts to repay her loans. Furthermore, ECMC points out that Plaintiff has not sought out alternative repayment programs, such as an IDR plan.

ECMC claims that no payments have been made since at least January of 2019 when it was assigned the loans. (ECMC Supp. Br. 6.) ECMC has been unable to confirm whether any payments have been made since 2011. (Id.) There is also no indication Plaintiff has sought out any alternative repayment programs. However, "[d]ebtors who fail to make voluntary payments or enroll in a repayment program can still prove good faith. To do so, however, they need a probative explanation for their behavior." Trudel, 514 B.R. at 229.

10

Here, Plaintiff contends that she never had the ability to repay her loans.  Plaintiff has submitted copies of Internal Revenue Transcripts from 2011 to 2018 demonstrating her low income over the years.  (Pl.'s Aff. 9; Ex. C to Pl.'s Resp.)  Plaintiff currently works as many hours as she can but relies on her parents for support due to her medical issues and low income. Plaintiff also states that a family member had offered to repay her loans in a lump sum at one point, but Plaintiff was unable to determine how much she owed and where to send payments. (Pl.'s Aff. 7; Ex. A to Pl's. Resp.)  Plaintiff submitted a narrative detailing the extensive efforts she made to find out this information.  (Id.)  Viewing the facts in a light most favorable to Plaintiff, the court finds that a genuine dispute exists regarding whether Plaintiff has made good faith efforts to repay her loans.

## VI.   CONCLUSION

The court finds that there are genuine disputes of material fact.  Consequently, ECMC is not entitled to summary judgment.  The court will enter a separate order in accordance with this opinion.

#       #       #

**Service List:**


Edwin H. Breyfogle
108 Third Street NE
Massillon, OH 44646

Neil Schor
Harrington, Hoppe & Mitchell Ltd.
26 Market Street Suite 1200
Youngstown, OH 44503

11